1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRISTIN A. LINSLEY (SBN 154148)
   klinsley@gibsondunn.com
AUSTIN SCHWING, SBN 211696
   aschwing@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendants
NIKE, INC., FACEBOOK, INC., AND
GIBSON, DUNN & CRUTCHER LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN WOODHOUSE,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE UNITED STATES<br>GOVERNMENT, ET AL.,<br><br>                    Defendants. | CASE NO. 2:21-CV-06372-SB<br><br>**NOTICE OF MOTION AND MOTION BY NIKE, INC., FACEBOOK, INC. AND GIBSON DUNN & CRUTCHER LLP TO DISMISS COMPLAINT FILED BY PLAINTIFF BENJAMIN WOODHOUSE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing**:<br>Date:      November 12, 2021<br>Time:      8:30 AM<br>Place:     Courtroom 6C<br>Judge:     Hon. Stanley Blumenfeld, Jr. |

**TO THIS COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Please take notice that on November 12, 2021 at 8:30 A.M. in Courtroom 6C, of the above-captioned court, located at 350 West 1st Street, Los Angeles, CA, 90012, or as soon thereafter as may be heard, Defendants Nike, Inc. ("Nike"), Facebook, Inc. ("Facebook"), and Gibson, Dunn & Crutcher LLP ("Gibson Dunn") (collectively, the "Moving Defendants"), will, and hereby do, move this Court for an order dismissing with prejudice, under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative,

Rule 12(b)(6), all of the claims and causes of action contained in the Complaint filed in this action filed by Plaintiff Benjamin Woodhouse.

Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because there is no actual controversy here.  The Complaint is a "wholly insubstantial and frivolous" set of claims based on nothing more than a series of incoherent, rambling, and wildly unsupported allegations of conspiracy theories, all asserted by someone whom this Court has already twice sanctioned for filing false accusations and against whom the Court has issued two separate vexatious litigant orders, both of which the Complaint violates.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (citations omitted).  Alternatively, the Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Although Plaintiff purports to allege claims for (1) Intentional Infliction of Emotional Distress, (2) Negligence, (3) Fraud on the Court, and (4) Intentional Interference with Prospective Economic Relations, each of the claims rests entirely on fanciful, unhinged, and unsupported allegations that are devoid of the type of plausible factual details that are required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiff has not alleged, or even attempted to address, each of the required elements for the claims the Complaint advances, much less support them with plausible allegations.

The Moving Defendants' motion is based on this Notice and Motion, all matters of which judicial notice may be taken, the papers and pleadings on file herein, and such additional papers and arguments as may be presented at or before the hearing of this matter. This motion is made following unsuccessful attempts by the undersigned counsel to meet and confer with the Plaintiff, who is representing himself in this matter.  *See* Declaration of Austin Schwing ("Schwing Decl."), ¶¶ 2-6.

1   Dated: October, 1, 2021

2                                              KRISTIN A. LINSLEY
                                               AUSTIN SCHWING
3                                              GIBSON, DUNN & CRUTCHER LLP

4

5                                              By:  /s/ Austin Schwing

6                                                           Austin Schwing

7                                              Attorneys for Defendants
                                               NIKE, INC., FACEBOOK, INC., AND
8                                              GIBSON, DUNN & CRUTCHER LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................... 2

    A.    Woodhouse's and Havensight's Past Litigation Against Nike ................. 2

    B.    The Harassment Campaign by Woodhouse and Havensight Against Facebook ........................................................................... 6

    C.    Woodhouse and Havensight's Latest Frivolous Lawsuit ....................... 10

        1.    Allegations Regarding Nike ..................................................... 11

        2.    Allegations Regarding Facebook .............................................. 14

        3.    Allegations Regarding Gibson Dunn .......................................... 15

III.   ARGUMENT ...................................................................................... 16

    A.    The Complaint Should Be Dismissed Under FRCP 12(b)(1) ................. 16

    B.    Alternatively, the Complaint Should Be Dismissed Under FRCP 12(b)(6) .......................................................................... 18

        1.    Plaintiff's First Cause of Action for Intentional Infliction of Emotional Distress Fails ................................................... 20

        2.    Plaintiff's Second Cause of Action for Negligence Fails ............ 21

        3.    Plaintiffs' Third Cause of Action for Fraud on The Court Fails ................................................................................ 23

        4.    Plaintiff's Fourth Cause of Action for Interference with Prospective Economic Advantage Also Fails ............................ 25

IV.    CONCLUSION .................................................................................. 25

Gibson, Dunn & Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## CASES

4

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006)................................................................17

5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................18, 19

7

8

*Balisteri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ...............................................18

9

10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................18

11

12

*Best v. Kelly*,
    39 F.3d 328 (D.C. Cir. 1994)...............................................17

13

14

*Bivolarevic v. U.S. CIA*,
    2010 WL 890147 (N.D. Cal. Mar. 8, 2020) .........................17

15

16

*Bolton v. Perales*,
    2016 WL 212793 (N.D. Cal. Jan. 19, 2016).........................19

17

18

*Corales v. Bennett*,
    567 F.3d 554 (9th Cir. 2009) ...............................................21

19

20

*Curran v. Holder*,
    626 F. Supp. 2d 30 (D.D.C. 2009)......................................17

21

*Day v. Apoliona*,
    496 F.3d 1027 (9th Cir. 2007) ........................................21, 22

22

23

*Detar v. United States Gov't*,
    174 F. Supp. 3d 566 (D.D.C. 2016)....................................19

24

25

*Dixon v. Comm'r*,
    316 F.3d 1041 (9th Cir. 2003) .............................................22

26

27

*Foster v. Carter*,
    2016 WL 7852472 (N.D. Cal. Dec. 1, 2016) ......................19

28

Gibson, Dunn &
Crutcher LLP

ii

*Hagans v. Lavine*,
   415 U.S. 528 (1974)...................................................................................... 16

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ................................................................. 21, 22

*Havensight Capital, LLC v. Facebook Inc.*,
   2015 WL 12766168 (C.D. Cal. July 21, 2015) ............................................... 6

*Havensight Capital, LLC v. Facebook Inc.*,
   2015 WL 3948380 (C.D. Cal. June 29, 2015)................................................. 6

*Havensight Capital LLC v. Facebook, Inc.*,
   2016 WL 4445919 (Cal. Super. 2016), *adopted by* 2016 WL 4410524 (Cal. Super.
   Mar. 30, 2016.................................................................................................. 7

*Havensight Capital, LLC v. Facebook, Inc.*,
   2018 WL 6340757 (C.D. Cal. Sept. 24, 2018)............................................ 8, 9

*Havensight Capital LLC v. Facebook, Inc.*,
   2018 WL 6356080 (C.D. Cal. Oct. 2, 2018) .................................................. 9

*Havensight Capital LLC v. Facebook, Inc.*,
   776 F. App'x 420 (9th Cir. 2019)............................................................... 9, 10

*Havensight Capital LLC v. Nike, Inc.*,
   2014 WL 12613382 (C.D. Cal. Nov. 19, 2014) .....................2, 3, 4, 7, 11, 12, 13

*Havensight Capital LLC v. Nike, Inc.*,
   2015 WL 3544111 (C.D. Cal. Apr. 22, 2015)............................................... 4, 5

*Havensight Capital LLC v. Nike, Inc.*,
   891 F.3d 1167 (9th Cir. 2018)........................................................... 4, 5, 6, 17

*Havensight Capital LLC v. Nike, Inc.*,
   2015 WL 993334 (C.D. Cal. Feb. 18, 2015) ................................................... 3

*Havensight v. Facebook*,
   2017 WL 1507491 (Cal. Ct. App. Apr. 27, 2017), *reh'g denied* (May 19, 2017),
   *review denied* (July 12, 2017)......................................................................... 7

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...................................................................... 18

Gibson, Dunn &
Crutcher LLP

*Lawrence v. Internal Revenue Service*,
   2019 WL 186865 (SD Fla. Jan. 14, 2019) ................................................................ 17

*Limandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ................................................................................. 25

*Manufactured Home Cmtys. Inc. v. City of San Jose*,
   420 F.3d 1022 (9th Cir. 2005) .............................................................................. 11

*McGarry v. Sax*,
   158 Cal. App. 4th 983 (2008) ............................................................................... 21

*Myser v. Tangen*,
   2014 WL 4436927 (W.D. Wash. Sept. 9, 2014) ................................................. 23

*Neitzke v. Williams*,
   490 U.S. 319 (1989) .............................................................................................. 17

*Newby v. Obama*,
   681 F. Supp. 2d 53 (D.D.C. 2010) ....................................................................... 17

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) ............................................................................... 20

*San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*,
   568 F.3d 725 (9th Cir. 2009) ............................................................................... 11

*Say & Say, Inc. v. Ebershoff*,
   20 Cal. App. 4th 1759 (1993) ........................................................................ 12, 15

*Stan Lee Media, Inc. v. Conan Sales Co. LLC*,
   546 F. App'x 725 (9th Cir. 2013) ......................................................................... 23

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   322 F.3d 1064 (9th Cir. 2003) ........................................................................ 12, 14

*Tosco Corp. v. Comm. for a Better Envir.*,
   236 F.3d 495 (9th Cir. 2001) ............................................................................... 16

*United Computer Sys., Inc. v. AT & T Corp.*,
   107 F. App'x 818 (9th Cir. 2004) ................................................................... 12, 14

*Walker v. Henry Ford Health System*,
   2019 WL 5455470 (E.D. Mich. Oct. 24, 2019) .................................................. 19

Gibson, Dunn &
Crutcher LLP

*Ybarra v. Circle K Corp.*,
   2020 WL 1536329 (D. Ariz. Mar. 31, 2020)............................................................19

*Yu v. Wells Fargo Bank, N.A.*,
   2017 WL 3315095 (E.D. Cal. Aug. 3, 2017) ........................................................19

*Yuan v. City of Los Angeles et al.*,
   2016 WL 3024104 (C.D. Cal. May 26, 2016)........................................................23

### STATUTES

Cal. Civ. Code § 335.1................................................................................................22

Cal. Civ. Code § 338(a)-(c) ......................................................................................22

### OTHER AUTHORITIES

www.havensightcapital.com .........................................................................................3

5 C. Wright & A. Miller, Federal Practice and Procedure 1216 (3d ed. 2004).............18

Gibson, Dunn &
Crutcher LLP

# I.    INTRODUCTION

Defendants Nike, Inc., Facebook, Inc., and Gibson, Dunn & Crutcher LLP (collectively, the "Moving Defendants") respectfully move this Court to dismiss the Complaint filed by Plaintiff Benjamin Woodhouse with prejudice under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, under Rule 12(b)(6).

Nike, Facebook, and Gibson Dunn have a long history of being harassed by Plaintiff Woodhouse, a California attorney, and his company, Havensight Capital LLC, for which Plaintiff also serves as litigation counsel.  On eight prior occasions, Havensight, represented by Woodhouse, who is its sole principal and counsel, brought frivolous lawsuits against Nike and Facebook, both of which were represented by Gibson Dunn, among other counsel.  All of these baseless lawsuits were dismissed with prejudice at or before the pleading stage.  Two judges of this Court declared Havensight a vexatious litigant, with respect to both Nike and Facebook, because of the baseless, harassing lawsuits Woodhouse filed on Havensight's behalf.  The present action clearly violates these vexatious litigant orders.  Judges of this Court also have sanctioned Woodhouse for his frivolous lawsuits and perjury on multiple occasions.  Woodhouse was repeatedly warned by Judge Otis D. Wright II, and Judge Fernando M. Olguin, and the late Judge Manuel L. Real, to cease and desist his unethical behavior and frivolous filings, which these judges found were clearly designed to harass Nike and Facebook.  As aptly summarized by Judge Olguin, "[a] series of judicial officers of this District have … conclu[ded] … that Havensight serially files frivolous papers." *Havensight Capital, LLC v. Facebook, Inc.*, 2018 WL 6340757, at *18 (C.D. Cal. Sept. 24, 2018).

Woodhouse has consistently refused to comply with this Court's orders.  On the contrary, those orders appear to have emboldened him to file a new baseless lawsuit accusing the U.S. government of plotting against him through allegedly corrupt judges.  Woodhouse describes a bizarre, fantastical, and largely incomprehensible conspiracy involving the United States Government (including its judges), foreign governments,

Facebook, Nike, Google, and Gibson Dunn.  He alleges corruption by multiple judges (including U.S. Supreme Court Chief Justice Roberts), repeated assassination attempts by the government (including by a parachutist and a fighter jet in Australia), a bet for a space shuttle between Sir Richard Branson and the Soviets regarding Woodhouse's sexual orientation, stolen emails, U.S. Secret Service agents using "homosexuals" to sexually harass Woodhouse, the government hiring prostitutes, the defendants planting listening devices in the home of Woodhouse's relative, the government subjecting him to weapons of torture (including "flash" weapons that burned him from the sky), organized crime infiltrating Pepperdine Law School, and the list goes on.

This patently baseless and absurd lawsuit does not constitute an actual controversy; it is nothing more than fantastical conspiracy theory devoid of substance. Accordingly, it should be dismissed for want of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Alternatively, it should be dismissed under Rule 12(b)(6) because it does not plausibly state a claim against the Moving Defendants, is barred by the prior judgments of this and other courts, and is improper because it violates this Court's prior vexatious litigant orders.

## II.    FACTUAL BACKGROUND

### A.    <u>Woodhouse's and Havensight's Past Litigation Against Nike</u>

The campaign of harassment by Woodhouse and Havensight against Nike began with three cases filed in August and September 2014, asserting baseless claims that Nike's "Nike F.C." brand logo infringed on a logo for an alleged Havensight-owned soccer brand "St. Thomas F.C."  *See Havensight Capital LLC v. Nike, Inc.*, 2014 WL 12613382, at *1 (C.D. Cal. Nov. 19, 2014); Schwing Decl., Exs. 2-3.  After Havensight's first two complaints were dismissed for procedural failings, in August 2014, Havensight's third iteration of the lawsuit was assigned to the Hon. Manuel L. Real, as case no. 2:14-CV-07153-R-FFM (the "-07153 case").  The district court dismissed the -07153 case with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6) on November 22, 2014 (Schwing Decl. Ex. 3;

Gibson, Dunn &
Crutcher LLP

*Havensight*, 2014 WL 12613382, at *1), but not before Havensight and Woodhouse filed dozens of frivolous papers, including three frivolous motions to recuse Judge Real, each of which was referred to and denied by the Honorable Otis D. Wright, II, and a false affidavit and writ of execution claiming a nearly $250 million judgment had been entered against Nike when none had been entered.  Schwing Decl., Ex. 4, at 3-5, Ex. 9.

The day after dismissal of the -7153 case, Havensight filed another case against Nike, making a series of vague allegations that Nike engaged in anticompetitive conduct with respect to soccer retail stores that allegedly harmed Havensight's soccer company, St. Thomas F.C.[1]  Schwing Decl. Ex 10; *Havensight Capital LLC v. Nike, Inc.*, No. CV 14-8985-R, 2015 WL 993334, at *4 (C.D. Cal. Feb. 18, 2015).  The complaint in the -8985 case was based on an attached affidavit of Woodhouse.  Schwing Decl., Ex. 5.  In this affidavit, Woodhouse falsely represented that an owner of a soccer store purportedly had told him of Nike's alleged anticompetitive practices.  Schwing Decl., Exs. 5, 10; *Havensight*, 2015 WL 993344, at *2.  That representation was proven false in a sworn declaration by the soccer store owner, who explained that Woodhouse had fabricated the entirety of the statements in his affidavit.  Schwing Decl., Ex 10; *Havensight*, 2015 WL 993334, at *4.  On February 18, 2015, Judge Real issued an order granting Nike's motion to dismiss with prejudice.  *Id.*  That same day, the district court issued an order imposing sanctions on Woodhouse for violating Rule 11(b)(1)-(3) by presenting a "false affidavit" to deceive the court and for advancing "unwarranted, frivolous claims" to harass Nike.  *Id.* at *2.  The court ordered

---

[1]  Reference to Havensight's "soccer company" is not meant to suggest Havensight or any of its supposed businesses are real business enterprises.  Havensight also claims to own and operate a revolving door of companies—with its current roster listing a coffee company, a credit card company, a website design company, a jewelry company, a golf club, a soccer league, a mobile phone company, etc.  See www.havensightcapital.com.  As far as can be discerned, Havensight is actually just Woodhouse.

Gibson, Dunn & Crutcher LLP

3

Woodhouse to pay Nike's reasonable attorneys' fees and costs, later determined to be in the amount of $89,729.01.  Woodhouse never complied with that order.

Woodhouse filed dozens of frivolous papers in the -8985 action, including three more baseless motions to recuse Judge Real, each of which was referred to and denied by Judge Wright, and another false affidavit and writ of execution, this time falsely claiming he had obtained a judgment against Nike in the amount of $678.5 million when, in fact, Woodhouse knew judgment had not been entered.  Schwing Decl., Exs. 4, 6; *see also* Schwing Decl., Ex 12; *Havensight*, 2015 WL 12776594, at \*3. Woodhouse also improperly sent several emails to Nike's in-house counsel (despite knowing that Nike was represented by outside counsel) threatening, in violation of the rules of professional conduct, that she would be prosecuted and imprisoned unless Nike immediately agreed to a multi-million dollar settlement.  *See* Schwing Decl., Ex. 8.  Nike sought an *ex parte* order to enjoin these ethical violations, which the Court promptly issued.  *Id.*; *see also Havensight Capital LLC v. Nike, Inc.*, 891 F.3d 1167, 1170 (9th Cir. 2018).

Judge Wright held a hearing on Woodhouse's repeated recusal motions on February 2, 2015.  Judge Wright denied the motions as frivolous, and warned Woodhouse of possible sanctions based on the court's finding of "reprehensible" conduct, perjury, and ethical violations by Woodhouse, including by "threatening a litigant during the course of litigation in order to coerce a settlement based upon lies— yes, lies—that [he] had received a default judgment for several hundred million dollars."  *See* Schwing Decl., Ex. 13; *Havensight Capital LLC v. Nike, Inc.*, 2015 WL 3544111, at \*6 (C.D. Cal. Apr. 22, 2015).  Undeterred, Havensight and Woodhouse filed yet another motion to recuse Judge Real.  This time, not only was the motion denied, but Judge Wright issued an order imposing $1,000 in sanctions on Woodhouse for violating Rule 11 and 28 U.S.C. § 1927.  Schwing Decl., Ex. 4.  The district court found that "[t]here can be no clearer case of conduct by counsel which has the effect of multiplying and increasing the cost of litigation" such as [f]alsely representing to an

opposing litigant that he has secured a default judgment against them for hundreds of millions of dollars." *Id.* at 6. Recounting Woodhouse's "bizarre" behavior during the course of the litigation—including his "incoherent" "barely intelligible" and "wholly illogical" filings, false representations about securing judgment for hundreds of millions of dollars when in fact there was no judgment, threats to contact the FBI, and wild allegations of "quasi terrorist" and "racist" product advertising—the district court also expressed doubt that Woodhouse's behavior was "the product of a completely healthy mind." *Id.*; *see also* Schwing Decl., Ex. 23. On April 2, 2015, the court filed a disciplinary referral of Woodhouse "to the California Star Bar stemming from the Court's imposition of sanctions." *See Havensight*, 891 F.3d at 1170. Unfortunately, the State Bar did not take action against Woodhouse.

On April 22, 2015, Judge Real entered an order declaring Havensight a vexatious litigant and requiring that Havensight seek "permission" from the Court before "filing any action that arises from or relates to Havensight Capital LLC and its brand 'St Thomas F.C.' against Nike Inc." Schwing Decl., Ex. 13; *Havensight*, 2015 WL 3544111, at *6. Judge Real stated that Woodhouse (through Havensight) had engaged in frivolous, repetitive litigation designed to harass Nike. *Id.* at *2-5; *Havensight*, 891 F.3d at 1170. Woodhouse has now flouted that order by filing his own Complaint against Nike raising exactly the types of allegations that this Court indicated must be pre-approved. But, to be clear, Woodhouse and Havensight are indistinguishable—Woodhouse is not only the lawyer for Havensight, but also its sole executive, promoter, and director, according to Havensight's SEC filings. Schwing Decl., Ex 11.

In the -8985 case, Woodhouse and Havensight appealed the dismissal and Rule 11 sanctions orders to the Ninth Circuit. As that Court summarized it:

> This appeal is the latest in an ongoing and bizarre dispute between Havensight Capital LL (Havensight) and Nike, Inc. (Nike). Throughout these proceedings, Havensight has portrayed its action as a battle between

1    David and Goliath.  In reality, however, it is more akin to Don Quixote
     tilting at windmills.

2    *Havensight Capital LLC v. Nike, Inc.*, 891 F.3d 1167, 1169 (9th Cir. 2018).  With

3    respect to the Rule 12(b)(6) dismissal, the Ninth Circuit dismissed the appeal as

4    untimely.  *Id.*  The Ninth Circuit also denied Havensight's effort to seek review of the

5    vexatious litigant order and various sanction orders.  *Id.*  The Court held that the use of

6    Rule 11 sanctions was "amply supported" because Havensight's filings were

7    "sufficiently frivolous or abusive," including its "numerous and voluminous motions

8    despite specific warnings to desist filing these needless pleadings."  *Id.* at 1174.

9    **B.    The Harassment Campaign by Woodhouse and Havensight Against**

10   **Facebook**

11   Woodhouse led Havensight in a similarly Quixotic campaign against Facebook.

12   In May 2015, Woodhouse filed an action in this Court seeking millions of dollars in

13   damages based on allegations that Havensight purchased seven "pay-per-click" web

14   advertisements from Facebook and claiming Facebook allegedly overcharged for these

15   advertisements in an alleged amount less than $100.  The complaint also included a

16   series of bizarre allegations untethered from this underlying overcharge theory, and

17   asserted the same series of state law claims that are alleged in this action.  The district

18   court (Judge Olguin) found diversity of citizenship lacking—and in particular found

19   that Havensight was a California citizen, despite Woodhouse's representations that it

20   was a citizen of the Virgin Islands—and dismissed the action for lack of subject matter

21   jurisdiction.  Schwing Decl., Ex. 14; *Havensight Capital, LLC v. Facebook Inc.*, 2015

22   WL 3948380, at *7 (C.D. Cal. June 29, 2015).  Over the course of that short-lived

23   action, Havensight made numerous filings that the court found to lack a "reasonable

24   basis," 2015 WL 3948380, at *3 n.4, leading Judge Olguin to warn that, if the case had

25   not been dismissed, the court would have issued an order to show cause why

26   Havensight should not be declared a vexatious litigant.  *Id.* at *1 n.2.  These baseless

27   filings included "ten applications, responses, requests, or statements seeking default

28   judgment against [Facebook] within the span of a week," (*id.*), based on meritless

assertions of fraud and unsupported claims that Facebook's motion to dismiss was untimely.  Schwing Decl., Ex. 15; *Havensight Capital, LLC v. Facebook Inc.*, 2015 WL 12766168, at *2 (C.D. Cal. July 21, 2015).  Havensight filed numerous additional motions and applications even after dismissal, including a motion to reassign the case to another judge.  *Id.*  The Hon. Beverly Reid O'Connell denied the motion to disqualify Judge Olguin, finding that Havensight "failed to provide any evidence or even factual allegations" supporting recusal.  Schwing Decl., Ex. 16.

Havensight promptly filed a nearly identical complaint against Facebook in California Superior Court.  In March 2016, Judge Joseph C. Scott sustained Facebook's demurrer to the complaint in its entirety, holding that Havensight had not pled any viable cause of action.  *Havensight Capital LLC v. Facebook, Inc.*, 2016 WL 4445919, at *1 (Cal. Super. 2016), *adopted by* 2016 WL 4410524, at *1 (Cal. Super. Mar. 30, 2016).  Havensight filed an amended complaint that added a series of additional bizarre allegations, including that Facebook sent a "contractor" and an "army of young female claimant researchers" to harass Woodhouse.  Facebook again demurred, and the Superior Court—this time Judge Donald J. Ayoob—issued a detailed order sustaining Facebook's demurrer without leave to amend.  *Havensight*, 2016 WL 4410551, at *1 (Cal. Super. June 16, 2016).  After a motion for reconsideration was denied, Havensight appealed.

In April 2017, the California Court of Appeal affirmed the trial court's ruling on the demurrer.  Schwing Decl. Ex. 17; *Havensight v. Facebook*, 2017 WL 1507491, at *2 (Cal. Ct. App. Apr. 27, 2017), *reh'g denied* (May 19, 2017), *review denied* (July 12, 2017).  As the Court of Appeal observed, Havensight's appellate briefing "failed to provide any comprehensible argument …."  *Id.* at *3.  Instead, Havensight's brief made a "series of collateral attacks on the trial court's order," but this "poorly briefed" effort had nothing to do with the demurrer ruling, "the only ruling at issue in this

Gibson, Dunn &
Crutcher LLP

appeal." *Id.*  The appeals court denied rehearing and the California Supreme Court denied review.

The harassment continued.  On September 13, 2017, shortly after the California Supreme Court issued its ruling, Havensight filed a third action against Facebook—this time again in federal court.  Apart from tacking on a claim under the federal RICO statute to avoid the subject matter jurisdiction problem that produced the earlier dismissal, the complaint advanced the exact same allegations and causes of action that were alleged in the prior two cases and that were the subject of the final judgment in the state court action.  Schwing Decl., Ex. 18; *Havensight Capital, LLC v. Facebook, Inc.,* 2018 WL 6340757, at *1 (C.D. Cal. Sept. 24, 2018).  As before, the complaint consisted largely of rambling, nonsensical, and self-contradictory factual assertions—including fantastical allegations that Facebook hired "an army of" little girls and unnamed contractors to follow Woodhouse and harass him on his way to the bathroom at a public event.  Facebook filed three motions:  (1) to dismiss the complaint as barred by res judicata, collateral estoppel, and the applicable statutes of limitations, and because it failed to state any viable claim under Rule 12(b)(6); (2) to have Havensight declared a vexatious litigant; and (3) for the imposition of sanctions under Rule 11 because the complaint was factually and legally frivolous and barred in its entirety by the res judicata effect of the state court judgment.[2]  *Id.* at *1-4.

Judge Olguin granted all three motions in September 2018.  Schwing Decl., Ex. 18; *Havensight*, 2018 WL 6340757, at *1.  First, the court dismissed the complaint because "all of Havensight's claims are barred by res judicata" by virtue of the

---

[2]  Throughout this saga, Woodhouse sent countless harassing emails to counsel, making bizarre assertions of the kind that led judges in the Central District to express concern regarding his competency.  Schwing Decl., Ex. 4, at 6.  In one example, Woodhouse accused Facebook of having secret "foreign policy" meetings with China; in another, he advanced wild allegations of judicial bribery akin to those asserted in the instant case.  *Id.*, Ex. 20 ("We may however also choose to relinquish our right to recovery, and refer this matter effective immediately to a National Security Court, to determine how and why our government, which is a democracy, has lost both the Appellate and San Mateo Court, due to alleged, prostitution, bribery, and tampering of Judicial officials by an almost Trillion dollar company.").

California Superior Court judgment.  The court rejected a number of other arguments, including one repeated in this case (relating to purported "felonious" misconduct by Facebook's counsel in connection with emails from Woodhouse making extortionate demands for payment).  *Id*. at *8-13.  Second, the court imposed sanctions on Woodhouse under Rule 11(b)(2)-(3), concluding that the complaint was factually and legally frivolous because its claims were "not warranted by existing law," in that they were clearly barred by res judicata, and asserted many allegations with "no evidentiary support or basis in fact."  *Id.* at *13-15.  The district court ordered Woodhouse to pay Facebook's reasonable attorneys' fees and expenses, later determined to be $71,269.89.  Third, the court declared Havensight a vexatious litigant as a result of Woodhouse's "abuse[ of] the process of this court" and "waste[ of] the resources of the parties and the court" through a pattern of "serially fil[ing] frivolous papers" including a complaint advancing "false" contentions, all of which "exhausted the limited resources of the courts and imposed unnecessary costs on other parties."  *Id.* at *15-20.  The district court imposed a pre-filing condition and bond requirement, prohibiting Havensight from filing, without prior approval, any action in this District against Facebook "based on any allegation related to online advertisements, unfair business practices, anticompetitive conduct, fraud, tortious conduct, negligence, or racketeering."  *Id.* at 20.

Neither Havensight nor Woodhouse ever paid the sanctions award or fulfilled the bond requirement.  Instead, Havensight filed a meritless motion for reconsideration and to disqualify Judge Olguin.  On October 2, 2018, the Hon. Christina A. Snyder denied the disqualification motion, finding that Havensight's "argument has no basis" and was "unfounded," and further noting that there was nothing improper about Judge Olguin considering Havensight's many emails that made "unsolicited demands for compensation to cease and desist his extortionate conduct against Facebook," as

"evidence that plaintiff is a vexatious litigant." Schwing Decl., Ex. 19; *Havensight Capital LLC v. Facebook, Inc.*, 2018 WL 6356080, at *1 (C.D. Cal. Oct. 2, 2018).

Havensight appealed the dismissal to the Ninth Circuit, which affirmed the judgment, holding that dismissal under the "doctrine of claim preclusion" was proper. *Havensight Capital LLC v. Facebook, Inc.*, 776 F. App'x 420 (9th Cir. 2019). The Ninth Circuit also noted that many of Havensight's filings below were "frivolous," and rejected as "unpersuasive" Havensight's arguments—repeated here—that "Facebook's counsel has alleged conflicts of interest," and that it was improper for counsel to present Woodhouse's extortionate email demands as evidence of his vexatious behavior as a litigant. *Id.* Woodhouse filed three motions for rehearing, all of which were denied, with the Court adding that "no further filings will be entertained in this closed case." Schwing Decl., Ex. 21. Undeterred, Woodhouse filed two more motions to reconsider on the basis of supposed "plead felonies" and "conflicts of interest" by Facebook's counsel—the same allegations rejected by several judges of this Court. *Id.*, Ex. 22. The Ninth Circuit declined to entertain either motion.

## C.   <u>Woodhouse and Havensight's Latest Frivolous Lawsuit</u>

In this case, Woodhouse advances four claims—for (1) Intentional Infliction of Emotional Distress; (2) Negligence; (3) Fraud on the Court; and (4) Intentional Interference with Prospective Economic Relations—all of which are based on bizarre, incomprehensible, and implausible assertions. The fanciful allegations focus in part on the U.S. government's supposed efforts to engage in or encourage the torture, assassination, and harassment of Woodhouse and his company, Havensight Capital, as well as on a series of fantastical and wild assertions that Gibson Dunn and Facebook, in complicity with the U.S. Government, engaged in a scheme to end "private records and conflict checks at the appellate law level" (echoing Woodhouse's allegations in the Facebook actions), supposedly in exchange for bribes and escorts being provided "across a network of judicial officers," ranging from the Chief Justice of the Supreme Court to various other unnamed state and federal district and appellate judges, all of

1   whom supposedly caused the Ninth Circuit to rule against Woodhouse and his

2   company, Havensight Capital, in their two prior appeals.  Compl. at 1-6, 22-23.

3          The complaint is replete with outlandish conspiracy theories that are entirely

4   frivolous, many of which involve the U.S. government trying to assassinate or

5   otherwise undermine Woodhouse or his companies through judicial or political

6   corruption.  Rather than address all of these fantastical allegations, this motion will

7   focus on the nonsensical allegations relating to Nike, Facebook, and Gibson Dunn.

8          **1.      <u>Allegations Regarding Nike</u>**

9          Plaintiff makes relatively few allegations against Nike, but those that he makes

10   are outlandish, implausible conspiracy theories.  He alleges that "Judges need to learn

11   how to follow procedure when they take bribes, and not constantly move pre-maturely

12   constantly in reaction to bribes.  The moral defectiveness of all of this behavior, is like

13   Facebook Inc., and Nike Inc. board members, each, collecting handouts from the

14   Chinese Government, while denying opportunities for small business owners, and then

15   running around accusing others of looking for handouts."  Compl. at 12-13.  This is

16   nothing more than an incoherent rant that is both impossible to follow and devoid of

17   facts that would make it plausible.

18          Plaintiff further alleges that Nike and Facebook "allegedly stole Havensight

19   Capital L.L.C.'s trade name for its clothing brand, utilizing Nike F.c., a few months

20   after the launch of its St. Thomas F.c., …."  Compl. at 12-13.  This allegation mirrors

21   those in to Havensight's initial lawsuit against Nike, and Plaintiff's attempt to sue

22   again on this basis violates the vexatious litigant order entered by Judge Real.  In the

23   prior case, Havensight made the nonsensical allegation that Havensight Capital created

24   a proprietary trade name of "St. Thomas F.C."—"F.C." stands for football club—and

25   that Nike engaged in trade misappropriation by using "Nike F.C." in its advertising.

26   This lawsuit was dismissed with prejudice on November 19, 2014.  *Havensight Capital*

27   *LLC v. Nike, Inc.*, 2014 WL 12613382, at *4 (C.D. Cal. Nov. 19, 2014).  Plaintiff may

28   not relitigate that issue here because it is barred by res judicata, *see Manufactured*

*Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005) (doctrine prevents parties "from relitigating issues" addressed in a final judgment on the merits), even if he now advances "different theories of recovery." *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 734 (9th Cir. 2009). Attempting to relitigate these same issues without prior approval from the Court also violates the pre-filing condition imposed in the vexatious litigant order. Indeed, because Woodhouse is the attorney for and sole owner and member of Havensight (*see* Schwing Decl., Ex. 11), and he controls Havensight as a mere vehicle to conduct his own affairs, the two are alter egos and stand in privity. As such, Woodhouse is subject to orders entered against Havensight and is bound by adverse judgments under res judicata. *See United Computer Sys., Inc. v. AT & T Corp.*, 107 F. App'x 818, 820 & n.3 (9th Cir. 2004) (affirming alter ego finding where individual was not only the corporate party's attorney, "but its sole owner and officer," and also because he "so dominate[d] and control[led]" the company that there was "no longer any separation between the[ir] conduct"); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003) (relationship between association and individual members "is sufficient to bind them as parties in privity for res judicata purpose"); *Say & Say, Inc. v. Ebershoff*, 20 Cal. App. 4th 1759, 1769–70 (1993) (affirming alter ego finding and pre-filing condition against individual and corporation where individual filed frivolous lawsuits, noting that it would be "inequitable" to allow the individual to use the corporate entity "to continue with his misuse of the litigation process"). Plaintiff's claims against Nike should be dismissed for this separate reason.

Plaintiff further alleges "[t]he initial District Court, decided that Nike Inc.'s felonious entry of privileged communications, in which Nike Inc.'s counsel boasted about having sex with the wife of one of the Plaintiff friends and former classmate was clever, and that Havensight Capital L.L.C. should be sanctioned for raising the issue." Compl. at 40. Again, this absurd and unsupported allegation relates to Havensight's

previous failed litigation against Nike (in which Havensight was declared a vexatious litigant), thus barring his current attempt to relitigate this issue.  Plaintiff argued that Nike's counsel had improperly placed certain of Plaintiff's counsel's emails in the court record, arguing that this practice violated the settlement privilege—a point with which the Court disagreed.  *Havensight*, 2015 WL 12776594, at *3 (C.D. Cal. Feb. 3, 2015) (Wright, J., finding that "the publication of the settlement offers was actually the attachment of emails … [showing] that plaintiff's counsel had been committing various acts which might run afoul of the Rules of Professional Conduct").  That was done because Woodhouse was committing ethical violations by directly communicating with Nike's General Counsel and threatening her with criminal prosecution in an effort to strongarm Nike into settling the lawsuit.  Judge Real ordered Woodhouse to cease and desist from engaging in such actions.  Schwing Decl., Ex. 8.

Judge Wright, who was assigned to hear Havensight's motions to recuse Judge Real, found that Nike's counsel acted properly by raising this issue with the Court.  *See* Schwing Decl., Ex. 12; *Havensight*, 2015 WL 12776594, at *3; *see also* Schwing Decl., Ex. 4, at 3-5.  Judge Wright also entered an order sanctioning Woodhouse for his baseless attempts to have Judge Real recused, and reported him to the California State Bar.  Schwing Decl., Ex. 4 at 6.

Plaintiff also alleges "in the months leading up to the ruling in the Nike Inc. Appellate case, the Plaintiff was approached by people claiming to be associated with an Appellate Justice on the Panel, whose name is to be filed under seal in discovery, and requested money from the Plaintiff on two separate occasions" and asked for "Judicial bribes."  This suggestion of a Ninth Circuit judge seeking a bribe is outrageous and unsupported.  Rather than allege facts to support this baseless claim, Plaintiff asserts that "[t]he U.S. Government is requested to turn over satellite imagery and communications, which exist, and captured these bribes, and which are known

facts to the U.S. Government." Compl. at 42-43. Plaintiff's wild speculation that there would be "satellite imagery" of his imagined fantasy is beyond implausible.

### 2. Allegations Regarding Facebook

Most of Plaintiff's allegations about Facebook relate to alleged improprieties with the judiciary involving both Gibson Dunn and Facebook, and are summarized in the Gibson Dunn section below. As to Facebook, Plaintiff also advances many incomprehensible, fanciful, and unsupported allegations, such as that Facebook "will likely lobby the legislature to remove the legal profession in the coming years from U.S. statutory law" (Compl. at 9), that Facebook supposedly interfered with some unidentified customers of Woodhouse's business "ranging as far as the South Pacific" (*id.* at 62), that Facebook and the U.S. Secret Service procured prostitutes for unnamed judges who were "participating in the harassment" of Woodhouse personally (*id.* at 14), and that it is "unknown" whether it is "coincidental" that a Facebook Director supposedly purchased a $100 million home from a Universal Studios executive while Woodhouse supposedly was subjected to the bizarre government conspiracies he alleges (*id.* at 8, 32). Woodhouse also alleges, without support, that Facebook created fake businesses in "North Dakota, South Dakota, Idaho, and Montana" to transfer money to judicial officers and "Government Leaders, who represented those economically challenged States." *Id.* at 4. Finally, Woodhouse recycles many of the same meritless and fanciful allegations it made in Havensight's prior lawsuits against Facebook (e.g., conflicted counsel, late filings, "felonious" taking of emails and "feloniously enter[ing] private records", etc.), none of which addresses the merits of those cases (or this case), and all of which were repeatedly rejected by multiple judges in both state and federal court, as discussed in detail above. *Id.* at 11, 24, 40-41, 44. As explained above, because Woodhouse and Havensight are in privity, his attempt to relitigate any issues he raised or could have raised in the prior litigation against Facebook is barred by the *res judicata* effect of both the prior state court judgment and the prior federal court judgment. *Tahoe-Sierra*, 322 F.3d at 1082. Similarly, because

Havensight is his alter ego, as noted above, Woodhouse's attempt to file a lawsuit against Facebook that overlaps with the allegations made in his prior lawsuits against Facebook violates the pre-filing condition and vexatious litigant order entered by Judge Olguin. This case should be dismissed as to Facebook for that reason alone. *United Computer*, 107 F. App'x 818 at 820 & n.3 (affirming application of vexatious litigant order as to both plaintiff and alter ego company; *Say & Say*, 20 Cal. App. 4th 1759 at 1769–70 (holding similarly).

### 3.   Allegations Regarding Gibson Dunn

Woodhouse offers a similarly fanciful set of allegations against Gibson Dunn. He alleges that "members" of Gibson Dunn bribed and made "improper contacts" with "Judicial officers." Compl. at 5. The judges are not identified, with the exception of Chief Justice John Roberts. *Id*. Woodhouse incomprehensibly alleges that "contacts between Gibson Dunn violators, and Chief Justice John Roberts are also lucid, and surpass the level of judicial prudence, and decency." *Id*. He alleges the existence of "paid receptions by Gibson Dunn Inc., hiring of Supreme Court clerks into Gibson Dunn Inc., in a quid pro quo scheme, and procured favors, which spans the entire Judicial network from California to Washington D.C." *Id*. The Complaint goes on to present baseless assertions about the Chief Justice and one of his clerks taking bribes. *Id*. at 6, 44, 46.

Plaintiff also asserts, without support, that Gibson Dunn donated money to Barack Obama and Hillary Clinton, who then appointed the "alleged bribed Judicial Officers, at both, the District Court level, and the Appellate level in various matters." Compl. at 44, 46. He goes on to assert that Gibson Dunn had "improper contacts and meetings" with judges and clerks, failed to confer in cases, "bark[ed] down the phone at a 9th Circuit mediator," hired someone to impersonate Woodhouse in the Virgin Islands, represented "trillion dollar defendants" with "diametric interests," and "manipulate[ed] judicial officers through Client slush funds, and fake accounts." *Id*. at 6-12. He adds that "the Hon. John Roberts might have allegedly specifically engaged

1    in bribery in this matter, in retaliation for the Plaintiff's dissention at endangering his

2    life, and criticism of the U.S. Government's torture tactics." *Id*. at 12.

3          Plaintiff next asserts that Facebook and Gibson Dunn "paid consideration" to an

4    unidentified "banking firm" with which Plaintiff was attempting to confer regarding

5    one of its unidentified "portfolio companies," that Gibson Dunn contacted unidentified

6    customers, coordinated with the Secret Service to hire prostitutes that provided "sexual

7    favors" to state and federal judges as payment for them harassing Woodhouse as part

8    of a "very brain damaged quid pro scheme," and that Gibson Dunn planted cameras in

9    his family member's home.  Compl. at 13-15.  He also alleges that "Gibson Dunn Inc.

10   and Facebook Inc., along with its contractors had made payment to former highly

11   elected officials, including Presidents, and Secretaries of State, who had a role in

12   appointing the Appellate Judges." *Id.* at 24.  He includes vague allegations about

13   "Gibson Dunn Inc.'s Leaders" bribing judges and their relatives relating to

14   "abolishment of private records, and conflict check permanently from the law." *Id.* at

15   42.  And there are bizarre allegations that Gibson Dunn or Facebook made payments to

16   judges, and that "[t]he Judges and Leaders of Gibson Dunn on many levels are actually

17   stronger threats than such terrorists and organized Criminals." *Id.* at 43.

18         Plaintiff provides no details that would make these allegations plausible.  These

19   are simply more of the same paranoid, conspiracy assertions with no substance.

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed Under FRCP 12(b)(1)

20

21         A complaint may be dismissed pursuant to Federal Rule of Procedure 12(b)(1)

22   for lack of subject matter jurisdiction.  "When subject matter jurisdiction is challenged

23   under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to

24   survive the motion.  A plaintiff suing in a federal court must show in his pleading,

25   affirmatively and distinctly, the existence of whatever is essential to federal

26   jurisdiction, and, if he does not do so, the court, on having the defect called to its

27   attention or on discovering the same, must dismiss the case…." *Tosco Corp. v. Comm.*

28

*for a Better Envir.*, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).  A federal court lacks jurisdiction to consider claims that are "essentially fictitious," "obviously frivolous," or "obviously without merit."  *Hagans v. Lavine*, 415 U.S. 528 (1974).  Thus, "[a] claim may 'be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and is solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (citations omitted); *Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989) ("[a] patently insubstantial complaint may be dismissed ... for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Courts commonly dismiss frivolous cases making bizarre, fantastical conspiracy allegations.  *See*, *e.g., Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (claims that are "essentially fictitious" include those that allege "bizarre conspiracy theories, any fantastic government manipulations of their will or mind [or] any sort of supernatural intervention"); *Bivolarevic v. U.S. CIA*, 2010 WL 890147 *2 (N.D. Cal. Mar. 8, 2020) (dismissing with prejudice plaintiff's frivolous allegations that the CIA used "voice to skull technology" as a "mind control weapon" to speak directly to and read plaintiff's mind); *Lawrence v. Internal Revenue Service*, 2019 WL 186865 *1-2 (SD Fla. Jan. 14, 2019) (dismissing case making far-fetched allegations against the IRS, including illegitimate emails, causing plaintiff's wife to have an accident, boxing in plaintiff's car); *Newby v. Obama*, 681 F. Supp. 2d 53 (D.D.C. 2010) (dismissing as frivolous claims that President George W. Bush and his agents stalked plaintiff and caused a Kinko's employee to shut down the copying machines to prevent her from filing a mandamus application); *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) ("claims relating to alleged government surveillance and harassment of her are the type of 'bizarre conspiracy theory' that warrant dismissal under Rule 12(b)(1)").

Plaintiff's Complaint is subject to dismissal on this same basis.  It makes patently baseless allegations about government conspiracies, assassination attempts, weapons of torture, bribed appellate judges, sexual harassment, stolen documents, and

1    many others.  The events alleged in the Complaint are figments of Woodhouse's

2    imagination; there is no actual controversy.  As the Ninth Circuit put it in describing

3    Havensight's last lawsuit against Nike, it is "akin to Don Quixote tilting at windmills."

4    891 F.3d at 1169.  This new lawsuit is even worse.  In the section below, the Moving

5    Defendants address these frivolous allegations and explain why Plaintiff has failed to

6    state a cause of action.  For the same reasons, this Court can find that it lacks

7    jurisdiction under Rule 12(b)(1).

8    **B.**      **Alternatively, the Complaint Should Be Dismissed Under FRCP 12(b)(6)**

9              Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there

10   is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged

11   under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699

12   (9th Cir. 1990).  The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*,

13   550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make it clear that

14   conclusory allegations cannot withstand a challenge under Rule 12(b)(6).  To survive a

15   motion to dismiss, a complaint must plead facts sufficient to "state a claim to relief that

16   is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim has "facial plausibility"

17   only if the complaint pleads facts sufficient to allow "the court to draw the reasonable

18   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

19   678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

20   requires more than labels and conclusions, and a formulaic recitation of the elements of

21   a cause of action will not do." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046

22   (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).  A complaint must contain more

23   than a "formulaic recitation of the elements of a cause of action;" it must contain

24   factual allegations sufficient to "raise a right to relief above the speculative level."

25   *Twombly*, 550 U.S. at 555.  "The pleading must contain something more ... than ... a

26   statement of facts that merely creates a suspicion [of] a legally cognizable right of

27   action." *Id.,* quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216,

28   pp. 235 (3d ed. 2004).  "A claim has facial plausibility when the plaintiff pleads factual

1   content that allows the court to draw the reasonable inference that the defendant is

2   liable for the misconduct alleged." *Id.* at 570.

3          The *Iqbal* and *Twombly* decisions are motivated by the recognition that

4   defending oneself in litigation is expensive, even where one's defense is meritorious.

5   "Litigation, though necessary to ensure that officials comply with the law, exacts

6   heavy costs in terms of efficiency and expenditure of valuable time and resources that

7   might otherwise be directed to the proper execution of the work of the Government."

8   *Iqbal*, 556 U.S. at 685.  It is not fair to "unlock the doors of discovery for a plaintiff

9   armed with nothing more than conclusions." *Id*. at 678-79.

10         In examining the plausibility of allegations, the court need not accept as true

11  fanciful or delusional allegations.  Indeed, courts routinely dismiss cases like this

12  where plaintiffs allege outlandish, frivolous conspiracy theories because they do not

13  plausibly state a claim.  *See Yu v. Wells Fargo Bank, N.A.*, 2017 WL 3315095 *3 (E.D.

14  Cal. Aug. 3, 2017) (case dismissed with prejudice because allegations that Wells Fargo

15  was involved in stealing tires, robbing house, painting graffiti, making threatening

16  calls, and orchestrating a drive-by shooting was far-fetched and could not plausibly

17  support a claim); *Detar v. United States Gov't*, 174 F. Supp. 3d 566, 570-71 (D.D.C.

18  2016) (dismissing "rambling and often fantastical" complaint against government

19  defendants for targeting plaintiff and implanting electrical device in his body); *Foster

20  v. Carter*, 2016 WL 7852472 *2 (N.D. Cal. Dec. 1, 2016) (dismissal is proper when

21  case "involve[s] claims regarding implausible government conspiracies"); *Walker v.

22  Henry Ford Health System*, 2019 WL 5455470, at *1-2 (E.D. Mich. Oct. 24, 2019),

23  (dismissing case making "delusional, absurd, and unbelievable" allegations against a

24  hospital, including a conspiracy to kill the plaintiff."); *Ybarra v. Circle K Corp.*, 2020

25  WL 1536329 *2 (D. Ariz. Mar. 31, 2020) (dismissing case with prejudice where

26  plaintiff alleged Circle K was working "crimes against humanity" through involvement

27  with "organiz[ed] crimes against racism, hate, murder, crime ect. [sic] against myself"

28  because the allegations were "delusional factual scenarios.")  Further, the Court should

consider the totality of the Plaintiff's allegations and filings in determining whether the allegations are plausible. *See Bolton v. Perales*, 2016 WL 212793 *2 (N.D. Cal. Jan. 19, 2016) (when "allegations are read alongside other recent filings from Mr. Bolton, the allegations move further out on the spectrum past implausible and toward the delusional.")

### 1. **Plaintiff's First Cause of Action for Intentional Infliction of Emotional Distress Fails**

Under California law, the elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). Most of the allegations in this claim are against the U.S. Government. Plaintiff alleges the U.S. Government engaged in "multiple known assassination attempts" in early 2008, both in Malibu, California and Australia, and flew over him with a plane to burn him with "military grade thermal weapons." Compl. at 47. Plaintiff also asserts the U.S. Government committed this tort by "failing to communicate with Plaintiff" after "multiple known assassination attempts on his life." *Id.*

Plaintiff further speculatively alleges that "either, Gibson Dunn, Facebook Inc., or, its contracting affiliates, which will be named in discovery, placed video recording devices" in a "family member's home" and used that equipment to "respond[] to the Plaintiff's actions audially." Compl. at 49. He further incomprehensibly alleges that the "U.S. Government also inflicted emotional distress, in failing to follow 9th Circuit procedure, and prematurely making, a 2 in 1 ruling, after Facebook Inc. had not responded to an Appellate Motion." *Id.*

These fantastical, absurd allegations do not state a plausible cause of action against the Moving Defendants. It does not appear that this cause of action is directed toward Nike because Nike is not identified in any of the allegations. Nor does it state a

1   cause of action against Facebook or Gibson Dunn.  First, because these allegations are

2   delusional on their face, they fail plausibly to allege any cause of action.  Second,

3   Plaintiff's allegations that the Ninth Circuit issued a ruling with which he disagrees

4   cannot support a tort claim against the Moving Defendants because any such

5   disagreement must be addressed to the *en banc* Ninth Circuit or the Supreme Court,

6   not a district court.  *See Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (until

7   the Supreme Court "changes the law ... the Ninth Circuit and the district court are

8   bound by the Ninth Circuit's earlier precedent") (alterations omitted); *Hart v.*

9   *Massanari*, 266 F.3d 1155, 1170 (9th  Cir. 2001) (district judge may not "disagree with

10  his learned colleagues on his own court of appeals who have ruled on a controlling

11  legal issue").  Accordingly, this claim must be dismissed.

## 2.   Plaintiff's Second Cause of Action for Negligence Fails

13  Plaintiff's Second Cause of Action is for negligence.  "Under California law,

14  '[t]he elements of negligence are:  (1) defendant's obligation to conform to a certain

15  standard of conduct for the protection of others against unreasonable risks (duty);

16  failure to conform to that standard (breach of the duty); (3) a reasonably close

17  connection between the defendants' conduct and resulting injuries (proximate cause);

18  and (4) actual loss (damages).'"  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)

19  (*quoting McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

20  Most of the allegations "supporting" the negligence claim do not involve the

21  Moving Defendants; they are fantastical allegations against the United States

22  government regarding supposed assassination attempts, "terrorist response strategies,"

23  burning plaintiff with "aerial warfare devices," and bribes to appellate judges.  Compl.

24  at 51.  Plaintiff alleges that the U.S. Government "breached its duty" or "violated its

25  duty" to Plaintiff.  *Id*.  He makes no such allegation with respect to the Moving

26  Defendants.  Indeed, Facebook is not identified at all in this cause of action.

27  The allegations against Nike are similarly defective.  The only allegation

28  regarding Nike is that the "U.S. Government" supposedly "breached its duty and

1   showed Negligence in following any kind of procedure in the 9th Circuit as the alleged

2   Bribed Judges, here, removed the Assignment Order, and issued a 2 in 1 pre-mature

3   order for an Appellate Motion, which did not exist in the record, as its dismissive

4   document." Compl. at 51. Thus, the allegation apparently is that the *U.S. Government*

5   (not Nike) "breached its duty and showed Negligence." In any event, the allegation is

6   incomprehensible (it is unclear what an "Assignment Order" or a "2 in 1 premature

7   order for an Appellate Motion even are, much less why they were "negligent").

8   Plaintiff appears to be alleging that the Ninth Circuit negligently issued orders

9   (whatever they might be) with which Plaintiff disagrees. *Id*. Plaintiff does not seem to

10  comprehend that Ninth Circuit decisions are binding on this Court, and that he simply

11  cannot ask this Court to overturn those decisions. *Apoliona*, 496 F.3d 1027 at 1031;

12  *Massanari*, 266 F.3d at 1170. Further, this claim is time-barred. In California,

13  negligence claims based on "injury to, or for the death of, an individual caused by the

14  wrongful act or neglect of another" must be brought within two years. Cal. Civ. Code

15  § 335.1. A claim based on injury to property must be brought within three years. Cal.

16  Civ. Code § 338(a)-(c). The Ninth Circuit proceeding about which Plaintiff complains

17  was resolved on June 7, 2018, over three years ago. Plaintiff's negligence claim fails

18  on this basis as well.

19      The allegations with respect to Gibson Dunn are also fatally deficient. Plaintiff

20  alleges that "the U.S. Government also breached its duty, in allowing Gibson Dunn to

21  end private records and conflict checks by allegedly bribing 9th Circuit Judges and

22  Chief Justice John Roberts, with consideration for violating U.S. Statutory law."

23  Compl. at 51. He alleges the U.S. Government "violated its duty, here, in allowing

24  Judicial Officers to meet with Alphabet Inc. and Gibson Dunn Inc.'s Counsels, who in

25  this case were the same conflicted Counsel, without the Plaintiff's, either, presence, or,

26  knowledge." *Id*. These vague, unsupported, fantastical allegations about corruption

27  and improper *ex parte* contacts are implausible as a matter of law. As shown above,

28  these are just the types of conspiracy allegations that courts routinely dismiss.

Gibson, Dunn &
Crutcher LLP

### 3.    **Plaintiffs' Third Cause of Action for Fraud on The Court Fails**

Plaintiff's third cause of action alleges "fraud on the court"—which is a "narrowly construed" avenue of relief from a judgment, rather than a standalone cause of action. *See Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003) (power to vacate a judgment obtained by fraud applies "only to fraud that defiles the court or is perpetrated by officers of the court"). To establish fraud on the court, "a party must demonstrate by clear and convincing evidence the existence of an unconscionable plan or scheme ... designed to improperly influence the court in its decision." *Stan Lee Media, Inc. v. Conan Sales Co. LLC*, 546 F. App'x 725, 728 (9th Cir. 2013). Plaintiff has failed to state a claim against the Moving Defendants.

Nike is not identified by name in this cause of action at all. The only allegation that appears to relate to Nike is not an allegation of fraud by Nike, but an allegation that the U.S. Government somehow committed fraud through an appellate court clerk. Plaintiff alleges "the U.S. Government has engaged in Fraud, as the Appellate Court Clerk wrote and signed an Appellate Motion, which is felonious and was duly entered into the public record, in 9th circuit [sic] matter 15-56607." Compl. at 57. Plaintiff further alleges "[t]he Clerk was the cause of the fraudulent error, and it caused harm, as it led to the ending of private records and conflict checks, and impaired the legal rights of the Plaintiff." *Id.* There is also an allegation that "Defendants" "failed to disclosed [sic] payments to Mr. Barack Obama, and Ms. Hillary Clinton" whom Plaintiff alleges were involved in the "appointment process" of the Ninth Circuit panel and District Court judge. *Id.* at 53. These unsupported, outlandish conspiracy theories are frivolous. Any judge who dismisses Plaintiff's baseless complaints or rejects his implausible theories is branded as a co-conspirator who must be "on the take." This simply is not plausible, and Plaintiff has not stated a cause of action against Nike. *See, e.g.*, *Myser v. Tangen*, 2014 WL 4436927, at *3 (W.D. Wash. Sept. 9, 2014) (granting motion to dismiss fraud on the court allegations where complaint was devoid of facts and relied on unsupported "labels of bribery, fraud, conspiracy, and possibly of judicial

Gibson, Dunn &
Crutcher LLP

1  impropriety"); *Yuan v. City of Los Angeles et al.*, 2016 WL 3024104, at *3 (C.D. Cal.

2  May 26, 2016) (denying relief where "Plaintiff's claims of fraud, corruption, and

3  bribery upon the court are entirely unsupported by any specific facts or evidence").

4      The allegations regarding Facebook and Gibson Dunn are also defective.

5  Plaintiff alleges that "Gibson Dunn Inc. and conflicted Facebook Inc. and Alphabet

6  Inc., here failed to disclose their respective contacts with Judicial officers at the

7  District Court level, and Appellate Court levels, which resulted in the ending of private

8  records, and conflict checks in the U.S. case law." Compl. at 53. Plaintiff also asserts

9  that "either, Gibson Dunn, or, Facebook Inc. contractors, or, both, allegedly hired

10  Ms. Marjorie Roberts to impersonate Havensight Capital L.L.C. Counsel and further

11  their respective material misrepresentations to the Appellate Court, which speaks to the

12  very essence of the elements of Fraud." *Id*. at 54. Plaintiff alleges that "Gibson Dunn,

13  or, Facebook, here, allegedly feloniously accessed the Plaintiff's computer and stole

14  this filing, before it was filed …." *Id*. And he vaguely alleges that Facebook and

15  Gibson Dunn did not "provide Memos around Facebook Inc.'s price fixing" (memos

16  about which he claims, without any factual support, that a person named Mr. Tung

17  supposedly advised him, but only after deceiving him that the $48 in parking fees at

18  Mr. Tung's office would be validated). *Id*. at 54. There are also allegations about

19  failing to disclose "contacts with Chief Justice John Roberts" and the hiring of one of

20  his former clerks. *Id*. at 55. And the Complaint alleges that the U.S. government, in

21  an effort to prop up Facebook's stock price, entered an "Assignment Order" in matter

22  18-56304 in the Ninth Circuit. Lastly, it alleges vaguely that something Plaintiff calls

23  "California Bar Orders to Settle" were sent to an unspecified defendant "for all three of

24  the historically triple conflicted Clients," and that Facebook's counsel at Gibson Dunn

25  had conflicts of interest and did not respond to his emails or voicemails. *Id*. at 58.

26  Again, these are nothing more than fantastical conspiracy theories unsupported by any

27  plausible facts.

28

Gibson, Dunn &
Crutcher LLP

4. **Plaintiff's Fourth Cause of Action for Interference with Prospective Economic Advantage Also Fails**

The tort of interference with prospective economic advantage requires five elements:  (1) the plaintiff and a third party were in an economic relationship that probably would have resulted in an economic benefit to the plaintiff (2) the defendant knew about the relationship; (3) the defendant engaged in wrongful conduct; (4) the defendant intended to disrupt the relationship or knew that the disruption was substantially certain to occur as a result of the defendant's conduct; (5) the relationship was disrupted and the plaintiff was harmed as a result of the defendant's conduct. *Limandri v. Judkins*, 52 Cal. App. 4th 326, 340 (1997).

As with his other claims, Plaintiff offers a litany of absurd allegations that "various National governments" interfered with Plaintiff while he "was conscripted into counter terrorist measures," that "Government actors" "thwarted" meetings with "Trade Leaders," that "legal files" were stolen and provided to U.S. Government, and that the court was "bribed."  Compl. at 60-61.  He also includes an outlandish, vague allegation that "Gibson Dunn Inc. and the three conflicted Clients" "bribed private Banking Officials, which will remain anonymous until the discovery period, in offering consideration, in return for the Banking Leadership to deny services and capital to the Defendant."  *Id*. at 61.  And he complains of Facebook "routinely harassing the Plaintiff's [unidentified] prospective Customers" around the world and interfering with "indigenous groups that the Plaintiff solicited for phone services."  *Id*. at 62-63.  This is just a continuation of the same bizarre conspiracy theory offered throughout the Complaint.  It falls well short of asserting plausible allegations that could support a cause of action.  Accordingly, this claim should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request this Court to dismiss this case with prejudice under Rule 12(b)(1) or, alternatively Rule 12(b)(6).

Gibson, Dunn &
Crutcher LLP

25

1    Dated:  October 1, 2021

2                                          KRISTIN A. LINSLEY
                                          AUSTIN SCHWING
3                                          GIBSON, DUNN & CRUTCHER LLP

4

5                                          By:  /s/ Austin Schwing
                                                          Austin Schwing
6
                                          Attorneys for Defendants
7                                          NIKE, INC., FACEBOOK, INC., AND
                                          GIBSON, DUNN & CRUTCHER LLP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP